## HOWELL VS. HOWELL, ADM'R.

The slaves acquired by a married woman, unless by a conveyance expressly setting forth that they are given to her sole and separate use, do not become her absolute property under the statute, (*Dig.*, *chav.* 104, *and Amendment thereto of* 11th *January,* 1851), unless she file the schedule prescribed by the statute—the filing and recording of the last will and testament, in which such property is bequeathed to her, will not dispense with the schedule.

### *Appeal from Pope Circuit Court.*

The Hon. John J. Clendenin, Circuit Judge.

Jordan and Williams & Williams, for the appellant,

Contended that, under the true construction of the statute, *Dig.*, *chap.* 104, *p.* 712, and the Amendment, *Acts of* 1850, *p.* 122, the property of the wife vested absolutely in her, as her sole and separate property, whether a schedule be filed or not: that the only effect of filing the schedule prescribed by the act, was to exempt the wife's property from sale for the husband's debts—so that, under the statute, the property was the sole and separate property of the wife, subject to sale for his debts, as no schedule was filed, and remained hers upon his death: submitting the following authorities upon the construction of the statute: *Halbrook vs. Halbrook,* 1 *Pick.* 248; 19 *Cowen* 292; *Jackson vs. Collins,* 3 *Ib.* 89; 2 *Cranch.* 10, 358; 3 *Scam.* 153; 15 *J. R.,* 358; 9 *Wheat.* 381; 3 *Mass.* 523; 7 *Ib.* 458.

That if the filing of a schedule were necessary to vest the property in the wife as her separate property,—the Legislature intending such filing merely as notice to subsequent creditors,— the filing and recording of the will, by which the property was

given to the wife, being equal notice to all persons, was a full and substantial compliance with the requirement of the statute.

HOLLOWELL, for appellee.

Appellant wholly failed and neglected to render any schedule at all, as prescribed by the statute; nor did she even intimate her intention, in any way known to the law, of ever insisting that the negro belonged to her in her own right, and was intended to be held by her independently of her husband. Having failed to avail herself of the benefits and privileges afforded by the provisions of the " Married Woman's Law," she is now certainly precluded from asserting or maintaining any right to the property. It is submitted that the questions presented in this case, were either expressly or by implication, settled in the cases of *Lovette et ux. vs. Longmire*, 15 *Ark*. 341; *Tatum vs. Hines, Ib*. 180; *McNeil vs. Henderson, Ib*. 231; *McDaniel vs. Grace et al., Ib*. 465.

Mr. Justice SCOTT, delivered the opinion of the Court.

This was an action of replevin for a slave. The plaintiff below is the widow of one English J. Howell, deceased, and the defendant the administrator of the estate of the deceased. Upon issues to the pleas of *non detinet, and property in the defendant as administrator*, the cause was tried by a jury, who found for the defendant, and, judgment having been rendered accordingly, the plaintiff appealed to this Court, having, in the course of the trial, by bill of exceptions, brought upon the record all the evidence introduced on the trial, and the instructions that were given by the Court, and those that were asked for by the plaintiff, and refused by the Court.

From what is contained in the bill of exceptions, it appears, that during the coverture of the plaintiff below, her brother, Robert Davidson, departed this life, in the month of July, 1852, having a few months before, made and published his last will and testament, which was duly probated and recorded, in the month of September following, in the county of Pope, where

all the parties resided.  In that will is the following item, to wit:

" Second—I give and bequeath to my sister, Elvira Howell, Nancy a slave for life."

In the month of October next following, the executor of Davidson delivered over the slave to the plaintiff, who was then living with her husband and continued to do so up to the time of his death, in the fall of the year, 1854.  In the month of December next after his death, the defendant as the administrator upon his estate, whose rightful character as such was admitted, took possession of the slave against the consent of the plaintiff, and hired her out, for the benefit of the estate of his intestate.

The Court instructed the jury, in substance, as follows, to wit:

1. If they believed from the testimony that the slave in controversy was given to the plaintiff by the last will and testiment of her brother, while her husband, English J Howell, was living with her as such, and was reduced into the possession of the said English J. in his lifetime, that the property in the slave passed to the husband, and that he acquired an absolute right and title thereto.

2. That if they believed from the testimony that the defendant is the administrator of English J., that as such he was entitled to the possession of all the slaves of which he died possessed; and that if he died possessed of the slave in controversy, they must find for the defendant.

The instructions, which the plaintiffs asked, and the Court refused to give, were substantially, these, to wit:

1. That if the plaintiff has shown title to the slave in controversy, by virtue of a last will and testament duly recorded—before the delivery of the slave—in the clerk's office of the county where she and her husband resided, the propery, in that event, was the absolute property of the plaintiff free from any claim on the part of her husband, his administrator, or his heirs.

2. That the will and testament in evidence, together with its

certificate of probate and record, and the evidence of the delivery of the slave, by the executor, to the plaintiff, afterwards, was sufficient evidence to show separate and absolute property in the plaintiff, and was sufficient title to enable her to recover in this action.

3. That the administrator of the husband has no right, title or interest in the separate property of the wife, and if the jury should believe from the evidence that the slave in controversy was such, they must find for the plaintiff.

The plaintiff below predicated her right to recovery, upon the provisions of the statute of "married women," *Dig. ch.* 104, and the amendment thereto, approved the 11th January, 1851; *Pamph. Acts, p.* 122; and insists here, that claiming by last will and testament, as she did in this case, it was not incumbent upon her, as a pre-requisite to recover, to show, in addition to what she did, that she had caused to be filed in the recorder's office, in the county where she lived, the schedule provided for by the statute. (*Pamph. Acts of* 1851, *p.* 122, *sec.* 2.

That is the only question mooted by counsel in this case— and none other seeming to arise legitimately upon the record, we desire to be understood as intending to settle none other, and we make this remark, because having but little of precedent to guide our judgment on the plentiful harvest of questions, that must, as we think, arise out of our legislation creating new capacities and new rights for married women, we would desire to feel open for the lights which, from time to time as these questions arise, it will be no less the duty than the privilege of the bar to give us.

That which we have now to determine, has been discussed at full line; and with much ability we have been invited to leave the plain letter of the statute, and administer what the counsel insists is its true spirit and intent. We know that we should but illy discharge our duty, if we did not strive to comprehend the true intent and spirit of the Legislature, and fearlessly enforce it, although that might, in some degree, conflict with its letter, if expressed in terms at all ambiguous. But

when these terms are not so, as to the mooted point, but on the contrary, in clear and distinct language, express the same general idea in two several enactments of the Legislature upon the same subject, at an interval of four years, during which experience and reflection might well have suggested its modification, it would be going a great way to say, that that idea itself, although modified, was not part and parcel of the true intent and spirit of the law.

In the enactment of the 8th of December, 1846, it was provided (*Dig. ch.* 104, *sec.* 7,) that " before any married woman can avail herself of the privileges and benefits of this act, she and her husband shall make out a schedule of the property derived through her, under oath, which shall be verified by the oath of some other respectable person," etc.

By that approved 11th January, 1851, which repealed the foregoing, the same general idea was enacted in the following terms, to wit: " That before any married woman shall be entitled to the privileges and benefits of the provisions of chapter 104 of the statutes of Arkansas, she shall cause to be filed in the recorder's office," etc.: and that the property is not to be exempt from the husband's debts until from the filing of the schedule, was provided in both. At the same time an additional idea was enacted in the following words, to wit:

" That whenever the deed, bequest, grant, or decree, or other transfer of property of any kind to any married woman, shall expressly set forth that the same is designed to be held exempt from the liabilities of her husband, such property together with the natural increase thereof, shall be deemed and considered as belonging exclusively to such married woman under the provisions of chapter 104 of the Digest of the Statutes of Arkansas, and shall not be liable to execution or sale for the payment of the debts of her husband, whether contracted before or after the accruing of the title of the wife," etc.

It is to be observed of this latter enactment, that no schedule is required as a pre-requisite to the benefits which it provides for married women; and when the three enactments are con-

sidered together, it is to be seen, that in the settlement of the property by " the deed, bequest, grant, decree, or other transfer," which, by the latter one, is to be exempt from the operation of the provisions for the schedule, the marital rights of the husband have been already negatived in terms " expressly set forth" in the instrument of conveyance; while as to the property subject to the provisions for the schedule there is no such negation of the husband's marital rights. And, also, it is obvious, that while the latter property is not to be exempt from liability for the husband's debts, until from the filing of the schedule, the former is to be absolutely exempt from all liability for such debts " whether contracted before or after the accrual of the wife's title" thereto.

Hence, as we think, it is plain that the true intent of the Legislature, in reference to the schedule, was not only that it should perform the office of notice to creditors and purchasers, but also the not less important one of evincing, on the part of the married woman, her election to avail herself of the benefits of the law.

These benefits, for the enjoyment of which the law had also created for her ample legal capacity, were, nevertheless, but at the option of the married woman. Perhaps, having quietly surrendered to her husband at discretion, by force of the canons of the church, she might, for a time, desire no emancipation from his dominion, as that had been regulated by the common law; but, afterwards, prudential motives, in reference to herself or her offspring, might suggest the propriety of securing for herself the property she had brought into the marriage, or which had afterwards come in from her own kindred. This, it was the manifest intention of our law, with due regard to the rights of the creditors of her husband, to permit her to do, at any time during the coverture, so far as the same had not been disposed of by the husband , or encumbered with his debts.

The instrument, by which this is to be effected, so far as she is to be an actor, is the schedule. When she may have caused that to be filed, the law, in effect, at once gives the same legal

import to her title deeds, as if it had been originally expressed upon their face, that the property therein conveyed to her was for her sole and separate use, with the conditions annexed, however, that it is to remain encumbered with the debts of the husband, contracted previous to the filing of the schedule, and otherwise subject to the limitations provided in the law.

But until the filing no right accrues to her under any of the provisions of the act, or of the amendment thereto, save only that in case she might be possessed of property conveyed to her in terms, and to her sole and separate use expressly set forth, she might claim both the legal and the equitable title thereto, under the provisions of the 3d section of the amendment: whereas before that enactment the legal title in such case, would have been in the husband *in trust* for the sole and separate use of the wife.

Finding no error in the record we shall affirm the judgment.

---

The appellant's counsel having presented a petition for reconsideration of the opinion, the Court, by Mr. JUSTICE SCOTT, said:

We have carefully considered the matters urged in support of this application, and feel clear that it ought to be denied. So far as they consist of legal reasoning and apposite argumentation, they have been considered already in making up the judgment pronounced; which necessarily embraces the ground sought to be occupied. And while we entertain no doubt as to the counsel's sincere estimate of the conclusiveness of his argument, even to the extent that it could only be overruled when overlooked—we ourselves have already awarded to it the meed of praise—nevertheless, we can but persist in thinking that it ought not to be allowed to overturn, not only the plain letter of the law, but also, what we think to be its obvious spirit and intent.